Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| JENNIFER MARIE GONZÁLEZ FALCÓN<br><br>Peticionaria<br><br>v.<br><br>HOSPITAL HIMA SAN PABLO BAYAMÓN Y OTROS<br><br>Recurrida | KLAN202300942 | Apelación acogida como *Certiorari*<br>Procedente del Tribunal de Primera Instancia, Sala de BAYAMÓN<br><br>Caso Núm.:<br>BY2020CV00730<br><br>Sobre:<br>Daños y Perjuicios<br>Impericia Médica |

Panel integrado por su presidente el Juez Figueroa Cabán, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Mateu Meléndez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 11 de diciembre de 2023.

Jennifer M. González Falcón (en adelante, González Falcón o la peticionaria) presentó el 24 de octubre de este año una *Apelación* mediante la cual nos solicitó la revocación de la *Sentencia* dictada y notificada en la causa de epígrafe con fecha del 7 de septiembre del año en curso. Por virtud de este dictamen, el Tribunal de Primera Instancia, Sala Superior de Bayamón (en adelante, TPI o foro primario) paralizó los procedimientos del pleito y decretó su archivo sin perjuicio. Ello, ante la presentación por parte de Centro Médico del Turabo, Inc., haciendo negocios como HIMA San Pablo Bayamón (en adelante, HIMA) de una petición de quiebras ante el Tribunal de Quiebras de los Estados Unidos para el Distrito de Puerto Rico.[1]

---

[1] Para que un asunto sea revisable mediante el mecanismo de apelación, debe tratarse propiamente de una sentencia. El archivo administrativo decretado por la paralización automática en un caso no es el dictamen que pone fin definitivo a los asuntos litigiosos, sino que es una modalidad generalizada por la cual los tribunales archivan temporeramente- para efectos de las estadísticas- un caso que está inactivo. O sea, que, mediante este archivo, la controversia central del pleito continúa existiendo. IMG Investment v. ELA et al., 203 DPR 708, 724 (2019), citando a Pueblo v. Rodríguez Maldonado, 185 DPR 504, 516 esc. 12 (2012). Por ello, el *certiorari* es el vehículo apropiado para revisar el dictamen cuya revocación se persigue en el recurso de epígrafe. Siendo ello así, acogemos el mismo como tal, aunque, en ánimos de una resolución justa, rápida y económica, conservará su identificación alfanumérica.

Número Identificador

SEN2023 _____

Evaluados los planteamientos levantados por la peticionaria, expedimos el auto de *certiorari* solicitado por esta y confirmamos el dictamen recurrido. Veamos.

I

El caso de marras tiene su génesis en una *Demanda* instada por González Falcón por los daños y perjuicios que reclama sufrió a consecuencia de la muerte de su señor padre, el Sr. Ramón A. González Rivera (en adelante, señor González Rivera) causada por la negligencia de HIMA y demás partes demandadas.[2] Así, en su reclamación, alegó que el 4 de febrero de 2019, el señor González Rivera visitó la sala de emergencia del Hospital HIMA, fue dado de alta y, posteriormente, regresó el 10 de febrero de 2019. Tras señalar esto, reclamó que el hospital, así como los médicos que intervinieron con el señor González Rivera en su tratamiento médico, "negligentemente no activaron el protocolo de paciente que regresa a Sala de Emergencia después de haber sido dado de alta recientemente". Asimismo, indicó que, de no existir tal protocolo, ello de por sí constituyó negligencia y que, de existir, no cumplieron con el mismo. Por esto, y demás alegaciones allí incluidas, se solicitó al TPI que declarara Con Lugar la *Demanda* y concediera el remedio solicitado.

En lo concerniente a la controversia traída ante nuestra atención, es menester saber que, durante el trámite del pleito, específicamente el 23 de agosto de 2023, HIMA presentó *Moción informativa y en solicitud de orden de paralización por quiebra.* Como anuncia su título, en este escrito el hospital informó haberse acogido a la protección del Capítulo 11 del Código de Quiebras, 11 USC Sec. 1101, *et seq.*, y solicitó que conforme la Sección 362 del mismo código y la paralización que en virtud de la misma ordenó la Corte de Quiebras, se ordenara la paralización del pleito. Ese mismo día,

---

[2] La demanda fue enmendada en tres ocasiones: el 13 de febrero de 2020, el 18 de agosto de 2020 y el 28 de junio de 2023.

González Falcón se opuso a la paralización total del pleito y, a tales efectos, arguyó que la paralización que decreta la Sección 362 beneficia solamente al deudor y no a sus garantizadores solidarios, por lo que no procedía que se paralizara el pleito para con los demás demandados.

Atendida la oposición instada, el TPI ordenó a las demás partes que se expresaran en cuanto al asunto. En cumplimiento con ello, el Dr. Félix Ruiz Álvarez y SIMED como su aseguradora, presentaron *Moción en cumplimiento de orden*. En esta, plantearon que debía paralizarse la totalidad del pleito, toda vez que en la demanda se alegó que todos los demandados fueron cocausantes de los daños y se incluyeron alegaciones de negligencia entrelazadas entre las partes, HIMA incluido. Por ello, afirmaron que el TPI estaba imposibilitado de emitir una adjudicación de responsabilidad sin que se pase juicio en cuanto al grado de responsabilidad de HIMA, lo que violentaría la paralización ("automatic stay").

Evaluados los escritos, el 7 de septiembre de 2023, el foro primario dictó la sentencia apelada, en la que consignó que aun cuando HIMA era una parte codemandada, por virtud de la protección del Código de Quiebras, no puede defenderse en el pleito, ni participar del juicio en su fondo que se celebre en el caso. Por ende, ordenó la paralización total de los procedimientos. Inconforme, González Falcón instó oportunamente una *Moción de reconsideración a sentencia de paralización* que fue denegada mediante *Resolución* del 25 de septiembre de 2023, notificada el 26.

En desacuerdo aún, la peticionaria instó el recurso de epígrafe y como único error señaló que el TPI se equivocó al "declarar con lugar una moción informativa del Centro Médico del Turabo y paralizar por quiebra la totalidad del caso incluyendo los demás [codemandados] que no se encuentran en Quiebra." Atendido el mismo, el 26 de octubre emitimos *Resolución* en la que le ordenamos a la parte apelada a comparecer dentro

del término de 30 días que la Regla 22 de nuestro Reglamento, 4 LPRA Ap. XXII-B, establece.

En cumplimiento con ello el 22 de noviembre de 2023, el Dr. Félix Ruiz Álvarez y SIMED sometieron su *Alegato.* El Dr. Carlos Martínez Durán y su aseguradora, sometieron en la misma fecha su *Oposición a apelación.* Así, con el beneficio de la comparecencia de las partes, resolvemos.

II

**-A-**

El vehículo procesal de *certiorari* permite a un tribunal de mayor jerarquía a revisar discrecionalmente las órdenes o resoluciones interlocutorias emitidas por una corte de inferior instancia judicial. McNeil Healthcare v. Mun. Las Piedras I, 206 DPR 391, 403 (2021); 800 Ponce de León v. AIG, 205 DPR 163 (2020). La determinación de expedir o denegar este tipo de recursos se encuentra enmarcada dentro de la discreción judicial. *Íd.* De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". Medina Nazario v. McNeil Healthcare LLC, 194 DPR 723, 729 (2016). Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho." *Íd.*

Ahora bien, en los procesos civiles, la expedición de un auto de *certiorari* se encuentra delimitada a las instancias y excepciones contenidas en la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1. McNeil Healthcare v. Mun. Las Piedras I, *supra*; Scotiabank v. ZAF Corp et al., 202 DPR 478 (2019). La mencionada Regla dispone que solo se expedirá un recurso de *certiorari* cuando "se recurra de una resolución u orden bajo remedios provisionales de la Regla 56, *injunctions* de la Regla 57 o de la denegatoria de una moción de carácter dispositivo." 800 Ponce de León v. AIG, *supra*. Asimismo, y a manera de excepción, se podrá expedir este auto

discrecional cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, en asuntos relacionados a privilegios evidenciarios, en casos de anotaciones de rebeldía, en casos de relaciones de familia, en casos revestidos de interés público o en cualquier situación en la que esperar a una apelación constituiría un fracaso irremediable de la justicia." McNeil Healthcare v. Mun. Las Piedras I, *supra*.

El examen de estos autos discrecionales no se da en el vacío o en ausencia de otros parámetros. McNeil Healthcare v. Mun. Las Piedras I, *supra*, a la pág. 404; 800 Ponce de León v. AIG, *supra*. Para ello, la Regla 40 de nuestro Reglamento establece ciertos indicadores a tomar en consideración al evaluar si se debe o no expedir un recurso de *certiorari*.[3] Estos, pautan el ejercicio sabio y prudente de la facultad discrecional judicial. Mun. de Caguas v. JRO Construction, 201 DPR 703, 712 (2019). La delimitación que imponen estas disposiciones reglamentarias tiene "como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación." Scotiabank v. ZAF Corp. et al., *supra*, págs. 486-487; Mun. de Caguas v. JRO Construction, *supra*.

-B-

La paralización automática es una de las protecciones instituidas en el Código de Quiebras para aquellos que se acogen a sus disposiciones, ya que impide el comienzo o la continuación de cualquier proceso judicial, administrativo o de otra índole interpuesto contra el deudor. La paralización automática también funciona contra cualquier acción cuyo

---

[3] Estos son: si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho; si la situación de hechos planteada es la más indicada para el análisis del problema; si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia; si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados; si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración; si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio; si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

derecho nació antes de que se iniciara la quiebra. Allied Mgmt. Group v. Oriental Bank, 204 DPR 374 (2020), citando a Marrero Rosado v. Marrero Rosado, 178 DPR 476, 490-491 (2010) y 11 USC sec. 362. Una vez se presenta la petición de quiebra, la paralización automática surte efecto, extendiéndose hasta que se dicte la sentencia final. Íd.

El efecto de la paralización automática es detener automáticamente los pleitos que involucren reclamaciones monetarias y que se estén llevando contra el deudor al momento de radicar la petición de quiebra o aquellas que hayan podido comenzar antes de la presentación de la petición de quiebra. 11 USCA sec. 362(a). La paralización opera de forma inmediata y automática en los pleitos, no importa la causa de la reclamación monetaria. Sus efectos se manifiestan desde que se presenta la petición de quiebra, no requiriéndose una notificación formal para que surta efecto. Marrero Rosado v. Marrero Rosado, *supra*, pág. 491, citando a Jamo v. Katahdin Fed. Credit Union, 283 F.3d 392,398 (1er Cir. 2002). Por lo tanto, los tribunales estatales **quedan privados de jurisdicción automáticamente** y no pueden continuar atendiendo los casos en los que exista una reclamación monetaria contra el deudor que presentó la petición de quiebra. Marrero Rosado v. Marrero Rosado, *supra*; Jamo v. Katahdin Fed. Credit Union, *supra*.

Como regla general, la paralización automática aquí discutida no se extiende a terceros. Peerless Oil v. Hnos. Torres Pérez, 186 DPR 239 (2012). Generalmente, la misma "es exclusiva del deudor que se acoge a la quiebra.". Así, "[l]a responsabilidad de una persona que es codeudor, fiador o en alguna forma garantizador de un quebrado no se altera por la adjudicación en quiebra de este" La Comisión de los Puertos de Mayagüez v. González Freyre, Opinión del 15 de marzo de 2023, 2023 TSPR 28, 211 DPR __. Ahora, en circunstancias inusuales, un tribunal, conforme la Sección 362, *supra,* puede paralizar procedimientos en contra de codeudores no amparados por la quiebra. **Esto podrá ocurrir cuando**

**""[e]xiste tal identidad entre el deudor y el tercero demandado de manera que podría decirse que el deudor es la parte demandada real y que una sentencia contra el tercero demandado constituirá, en efecto, una sentencia o resolución contra el deudor", ... o cuando los procedimientos contra los codemandados codeudores puedan reducir o minimizar "la propiedad del deudor [como el fondo de seguro del deudor] en perjuicio de los acreedores del mismo como conjunto."** Peerles Oil v. Hnos. Torres Pérez, a la pág. 268, citando a A.H. Robins Co. v. Piccinin, 788 F.2d 994 (4to Cir. 1986). (Énfasis suplido)

III

Por medio de los argumentos aducidos por González Falcón en su escrito, esta argumentó que la paralización automática que el Código de Quiebras establece en su sección 362 sólo beneficia al deudor que se acoge a la quiebra, más no así a sus codeudores o garantizadores solidarios. Por ello, asevera que la orden de paralización emitida por el TPI no debió incluir y beneficiar al restante de los demandados, debiéndose ordenar en su lugar que los procedimientos continúen en cuanto a las causas de acción instadas en contra de cada uno de ellos.

Luego de efectuar un análisis objetivo, sereno y cuidadoso de la normativa expuesta previamente, advertimos que no hay duda de que HIMA se encuentra cobijada por la protección del Capítulo 11 del Código de Quiebras y que, en virtud de la orden de paralización emitida por la Corte de Quiebras, el TPI está impedido de continuar con el litigio en su contra, por lo cual procede dictar una sentencia de archivo administrativo, como hizo. Dicho archivo, tal como arriba citamos, no dispone en definitiva de las controversias, sino que el caso adviene inactivo hasta que se levante la paralización o concluya el caso de quiebra. Tal situación es una clara cuando la parte demandada es una sola persona o entidad que se acoge a la protección del Código de Quiebras. Sin embargo, cuando la reclamación se

ha instado contra más de un individuo o entidad, como regla general, la paralización automática será solamente sobre y con relación del deudor en quiebra y no el restante de los demandados.

Ahora, como arriba indicamos, a tal regla general se le han reconocido varias excepciones que extienden la paralización automática del Código de Quiebras a los codeudores del deudor quebrado. Así, la paralización automática de un deudor podrá ser extendida a terceros demandados no acogidos a la quiebra si entre el deudor y ese tercero demandado existe tal identidad que una sentencia contra el tercero demandado constituirá una sentencia contra el deudor.

Hemos identificado las alegaciones que González Falcón levantó en la *Demanda* y sus posteriores enmiendas contra cada uno de los demandados. Particular atención brindamos a aquellas instadas específicamente contra HIMA y hemos identificado que todas las alegaciones que contra dicha parte se levantaron son las siguientes:

- 6. **El codemandado Hospital HIMA San Pablo y los médicos que intervinieron en el tratamiento médico** el 10 de febrero de 2019 negligentemente no activaron el protocolo de paciente que regresa a Sala de Emergencia después de haber sido dado de alta recientemente. **En la alternativa de que no existiera dicho protocolo entonces se trata de una acción negligente por la que responde civilmente el Hospital HIMA San Pablo.** En la alternativa de que existiera el protocolo no se cumplió con el mismo.

- 15. **El codemandado Hospital HIMA San Pablo responde legalmente por su propia negligencia y porque el paciente ingresó a la institución por su Sala de Emergencia. Todos los médicos demandados que intervinieron en el tratamiento fueron escogidos y seleccionados por el codemandado HIMA San Pablo.**

- 20. El codemandado Dr. Félix Ruiz Álvarez negligentemente no le ofreció seguimiento a sus órdenes médicas, no reevaluó diariamente al paciente, no requirió los resultados de laboratorio sobre las bacterias y la sensitividad de las mismas a los antibióticos y no recomendó cambio de antibióticos que eran más efectivos. **En la alternativa de que no se le notificaron los resultados de laboratorios sobre el proceso infeccioso entonces las enfermeras y en su consecuencia el Hospital HIMA San Pablo también responden por esta negligencia**. Se reproducen contra el codemandado Dr. Félix Ruiz Álvarez todas las alegaciones de negligencia expuestas contra los codemandados Dr. Carlos Martínez Durán y el doctor José Rivera Mattei.

Como puede apreciarse de lo antes transcrito, las alegaciones de negligencia específicamente presentadas contra HIMA están entrelazadas con aquellas levantadas contra el facultativo médico a quien también se le imputó negligencia **solidaria** en el manejo del caso. Ciertamente, estas alegaciones hacen de HIMA una parte indispensable sin la que el caso no puede continuar. Así permitirle, le causaría un perjuicio sustancial indebido y le privaría de defenderse adecuadamente de las alegaciones y de la evidencia que se presente en su contra. Por tanto, resolvemos que la paralización decretada en el caso de epígrafe fue una razonable que ocasiona que no tengamos ante nos alguno de los criterios enumerados en la Regla 40 de nuestro Reglamento, *supra*, que sirven como guía para la expedición de un auto de *certiorari*.

IV.

Por las razones que preceden, expedimos el auto solicitado y confirmamos la *Sentencia* dictada y notificada en la causa de epígrafe con fecha del 7 de septiembre del año en curso, mediante la que el Tribunal de Primera Instancia, Sala Superior de Bayamón paralizó los procedimientos del pleito y decretó su archivo sin perjuicio.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones